UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC ARNONE,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    Defendant. | CIVIL ACTION NO. 3:20-CV-00750<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Plaintiff Marc Arnone brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). The matter was referred to the undersigned United States Magistrate Judge to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). The parties thereafter consented to the undersigned's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1), to adjudicate all proceedings related to this action. (Doc. 7).

For the following reasons, the Court will reverse and remand the Commissioner's decision for further proceedings.

I. **BACKGROUND AND PROCEDURAL HISTORY**

In June 2016, Arnone protectively filed an application for Title II disability insurance benefits, claiming disability beginning December 4, 2012. (Doc. 5-3, at 3). The Social Security Administration initially denied the application on January 19, 2017, and Arnone filed a request for a hearing on March 10, 2017. (Doc. 5-4, at 12, 17). Arnone's hearing was held on

October 3, 2018, before ALJ Ed Brady. (Doc. 5-2, at 53). In a written decision dated December 12, 2018, the ALJ determined that Arnone was not disabled and therefore not entitled to benefits under Title II. (Doc. 5-2, at 47).

On May 7, 2020, Arnone commenced the instant action. (Doc. 1). The Commissioner responded on July 10, 2020, providing the requisite transcripts from Arnone's disability proceedings. (Doc. 4; Doc. 5). The parties then filed their respective briefs (Doc. 8; Doc. 9; Doc. 10), with Arnone alleging two principal grounds for remand. (Doc. 8, at 6).

**II.   STANDARDS OF REVIEW**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.[1] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131. To establish an entitlement to disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

A. ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does

not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Arnone is disabled, but whether the Commissioner's determination that Arnone is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.[2] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that "[Arnone] was not under a disability, as defined in the Social Security Act, at any time from December 4, 2012, the alleged onset

---

[2] The Commissioner's argument that the RFC is a factual finding which can only be overcome by compelling evidence to the contrary is meritless. In support of this premise, the Commissioner cites an immigration case regarding asylum, where the Attorney General retains ultimate discretion. (Doc. 9, at 13) (citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n. 1 (1992). In the Social Security context, an award of benefits is mandatory if the claimant is disabled, and the law is well-established that the ALJ must support his or her decision with substantial evidence. *See Freeman v. Astrue*, 2011 WL 1131090, at *3 (E.D. Wis. 2011) (citing *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)).

date, through December 31, 2017, the date last insured." (Doc. 5-2, at 47). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4). Initially, the ALJ determined that Arnone's "earnings record shows that [he] has acquired sufficient quarters of coverage to remain insured through December 31, 2017." (Doc. 5-2, at 39).

### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572(a)-(b). The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that "[Arnone] did not engage in substantial gainful activity during the period from his alleged onset date of December 4, 2012 through his date last insured of December 31, 2017." (Doc. 5-2, at 41).

### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits" the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ considers step three. Here, the ALJ found that Arnone had the

5

following severe medically determinable impairments: left shoulder rotator cuff tear, status post repair; and degenerative disc disease of the spine, status post fusion. (Doc. 5-2, at 41).

    C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." Here, the ALJ determined that none of Arnone's impairments, considered individually or collectively, met or medically equaled the severity of a listed impairment. (Doc. 5-2, at 42). The ALJ specifically considered Listing 1.00 – musculoskeletal impairments. (Doc. 5-2, at 42); *see* 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00.

    D.    RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)-(c).

Here, based on his consideration of the medical opinions and other relevant evidence in the record, the ALJ determined that Arnone had the RFC to perform sedentary work as

6

defined in 20 C.F.R. § 404.1567(a) with the following limitations: occasional balancing or stooping; never kneeling, crouching, or crawling; never performing overhead reaching with the non-dominant left upper extremity; and frequently performing gross and fine manipulation with the dominant right upper extremity. (Doc. 5-2, at 42).

E. STEP FOUR

Step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). "If the claimant can perform his past relevant work despite his limitations, he is not disabled." Hess, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)).

Here, based on testimony adduced from a vocational expert at Arnone's administrative hearing, the ALJ determined that through the date last insured, "[Arnone] was unable to perform any past relevant work," which included that of an electrician/construction worker at medium/skilled levels. (Doc. 12-2, at 23). The ALJ proceeded to step five of the analysis.

F. STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant can adjust to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Arnone's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed

in significant numbers in the national economy that Arnone could have performed. (Doc. 5-2, at 46). In making this determination, the ALJ relied on the expertise of the vocational expert, who testified that Arnone could perform the requirements of representative occupations such as system monitor (DOT No. 379.367-010, with 135,000 positions nationally and 5,200 positions regionally), inspector (DOT No. 699.687-014, with 500,000 positions nationally and 20,000 positions regionally), and assembler (DOT No. 713.687-018, with 250,000 positions nationally and 2,500 positions regionally). (Doc. 5-2, at 46-47).

Based on his determinations, the ALJ concluded that Arnone was not disabled and therefore denied his application for benefits. (Doc. 5-2, at 47).

## IV. DISCUSSION

Arnone challenges the ALJ's ruling on two grounds. (Doc. 8, at 6). First, he submits that the ALJ was required to give significant or great weight to at least one medical opinion and this he did not do. (Doc. 8, at 6). By not affording such weight, Arnone avers that the ALJ interpreted the medical evidence of record and substituted his own opinion for that of a medical one. (Doc. 8, at 1). Arnone's second ground for remand is that the ALJ's RFC determination is not supported by substantial evidence because it fails to include front/lateral reaching limitations, as dictated by a physician's opinion. (Doc. 8, at 2).

### A. THE ALJ INAPPROPRIATELY INTERPRETED THE MEDICAL EVIDENCE.

Arnone asserts that the ALJ's decision cannot be supported by substantial evidence because the ALJ failed to indicate which medical opinion he relied upon. (Doc. 8, at 6). Citing *McKay v. Colvin*, 2015 WL 5124119 (M.D. Pa. 2015), Arnone states that the ALJ, by not assigning more than moderate weight to any medical opinion, substituted his own opinion for that of the medical professionals. (Doc. 8, at 6-12). Arnone addresses the ALJ's treatment of three opinions: that of Ida Figueroa-Ayla, whom he submits was erroneously referred to as

8

a medical doctor despite no record evidence of such and whose opinion was given only "little weight;" that of Dr. Hausknecht, whose opinion was afforded no probative value; and that of the consultative examiner, Dr. Grabon, whose opinion was given "partial, moderate weight." (Doc. 8, at 7-8). Arnone submits that the ALJ's failure to afford significant weight to any of the medical opinions necessitates an order of remand.

The Commissioner responds that treating source opinions may be discounted where they are not well supported or consistent with the record as a whole, or where they are not well supported or consistent with other evidence. (Doc. 9, at 17). He states that the ALJ need not match opinion evidence to the RFC. (Doc. 9, at 18). According to the Commissioner, *McKay* is distinguishable because a medical opinion found Arnone capable of performing higher level work than prescribed by the ALJ, whereas in *McKay* all three medical opinions rendered the claimant less capable than the ALJ concluded. (Doc. 9, at 18) (citing *McKay*, 2015 WL 5124119). The ALJ is permitted to develop an RFC that falls between competing opinions, a different situation from one where "an ALJ [] finds that a claimant is not disabled when all of the medical opinions indicate that the claimant is disabled," such as in *McKay*. (Doc. 9, at 20). The Commissioner avers that an ALJ's RFC can be composed of different parts of different opinions, rendering no opinion credited in its entirety. (Doc. 9, at 21).

An ALJ's lack of assigning significant or great weight to any medical opinion, alone, is not grounds for remand. Remand will often be ordered when such weight is not assigned, however the ALJ may implicitly rely upon aspects of an opinion, or an opinion as a whole, without explicitly assigning significant or great weight. *McKay's* holding is simply that the ALJ may not substitute her own lay opinion for that of a medical doctor's. *Monahan v. Berryhill*, 2018 WL 4102859, at *8. In *McKay,* without assigning significant or great weight to

9

any medical opinion, *the ALJ could not reject the medical opinion of a treating source.* Monahan, 2018 WL 4102859, at *8-9 (upholding the ALJ's decision which did not give significant weight to any medical opinion on the claimant's mental health, but which included various parts indicating "that the ALJ based the RFC on the findings of treating psychologist Dr. Berger") (emphasis added). Reliance on aspects of a medical opinion, without necessarily affording that opinion significant weight, is appropriate. Monahan, 2018 WL 4102859, at *8-9. The medical opinion may not be rejected, however, by the lay opinion or speculation of the ALJ. McKay, 2015 WL 5124119, at *17. Thus, it was not reversable error for the ALJ to not assign significant or great weight to any one medical opinion.

After asserting that the ALJ's failure to afford great or significant weight to any medical opinion is deserving of remand, Arnone proceeds to "explain why the ALJ's lay reinterpretation is so problematic in this case." (Doc. 8, at 10-12). He contends that the ALJ rejected a number of limitations prescribed by Dr. Grabon, including right upper extremity limitations, and that there was support in Arnone's medical record for such limitations. (Doc. 8, at 10-11). The Commissioner asserts that the right upper extremity limitations proposed by Dr. Grabon were inconsistent with the doctor's own examination report: he found that Arnone "had normal strength and sensation in *all* extremities, with intact hand and finger dexterity as Plaintiff could zip, button, and tie without difficulty," demonstrating an ability to perform fine and gross manipulation. (Doc. 9, at 12) (emphasis in original). The Commissioner additionally submits that Arnone's range of motion was full or nearly full in his arms, wrists, and hands, and that he had appropriate strength, dexterity, and motion. (Doc. 9, at 12). Finally, the Commissioner states that Dr. Grabon failed to explain the medical or clinical findings which supported his proposed manipulative limitations, and that

10

governing regulations mandate the ALJ discount an opinion if it "fails to 'present relevant evidence [as] support[,] … *particularly medical signs and laboratory findings*' or is not consistent 'with the record as a whole.'" (Doc. 9, at 12-13) (emphasis in original) (quoting 20 C.F.R. § 404.1527(c)(3)-(4)).

The ALJ's role in the administrative process is to translate the doctors' medical determinations – for example, that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours – into a residual functional capacity determination. *Decker v. Berryhill*, 2018 WL 4189662, at *5-6 (M.D. Pa. 2018) (quoting CAROLYN A. KUBITSCHEK & JON C. DUBLIN, SOCIAL SECURITY DISABILITY LAW AND PROCEDURE IN FEDERAL COURTS 344-45 (2014)) (internal citation omitted). The ALJ's determination is mechanical. *Decker*, 2018 WL 4189662, at *5. It is not the ALJ's responsibility to determine how much weight a claimant can lift, how long a claimant can walk, or any other physical capability; the ALJ takes the medical professionals' determinations of such issues and translates them into a finding of sedentary, light, medium, or heavy work. *Decker,* 2018 WL 4189662, at *5.

It is when the ALJ sets "his own expertise against that of a physician who presents competent evidence," that the decision becomes fatally flawed. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). If a medical opinion is in the record, the ALJ may not "find physical limitations in excess of any found by a medical professional." *Decker*, 2018 WL 4189662, at *6.

Upon performing an internal medicine examination, Dr. Grabon limited Arnone to "occasionally" reaching overhead, reaching in general, handling, fingering, feeling, and pushing/pulling with his right hand. (Doc. 5-11, at 57). Dr. Grabon left blank the area asking

11

to "identify the particular medical or clinical findings … which support your assessment of any limitations and why the finding support the assessment." (Doc. 5-11, at 57). Without identifying a medical opinion stating that Arnone was capable of more than that which Dr. Grabon prescribed, the ALJ stated that he "finds no basis for [Dr. Grabon's] proposed right upper extremity limits, neither in this exam nor on a longitudinal basis, and has not adopted those restrictions." (Doc. 5-2, at 45). The ALJ concluded that Arnone could "frequently perform gross and fine manipulation with the dominant right upper extremity." (Doc. 5-2, at 42).

Contrary to the ALJ's findings, the record contains evidence in support of Dr. Grabon's assessment. Dr. Grabon's examination reflects that Arnone had 85% grip strength in his right hand, as opposed to 100% grip strength in his left hand. (Doc. 5-11, at 64). Treatment notes from summer 2016 continually reflect that a doctor had ordered "no manipulation."[3] (Doc. 5-10, at 19, 36, 55, 58, 64, 72, 76). In August 2014, Arnone had pain traveling to his right hand, right cervical facet tenderness in his spine, and a Spurling test proved positive on his right side.[4] (Doc. 5-8, at 69).

After Dr. Grabon opined that Arnone could only occasionally reach overhead, reach

---

[3] The Commissioner submits that these notes should not be considered valid because this limitation was not included in the post-operative notes from Dr. Kuflik. (Doc. 9, at 15). However, the limitation appeared in the initial treatment note from Coordinated Health Rehabilitation, and the Court cannot assume that all communications between Dr. Kuflik and Coordinated Health Rehabilitation are included in the record. (Doc. 5-11, at 40). It would be speculative to disregard this limitation, which is repeated throughout the Coordinated Health Rehabilitation records, solely because it did not appear in Dr. Kuflik's post-operative notes.

[4] The Spurling test helps to diagnose cervical radiculopathy, which occurs when a nerve in the neck is pinched. Common symptoms include pain, weakness, or numbness in the arm or hand muscles. Jill Seladi-Schulman, Ph.D., *WHAT IS THE SPURLING TEST?*, Healthline (last updated Sept. 18, 2018), https://www.healthline.com/health/spurling-test.

in general, handle, finger, feel, and push/pull with his right hand, the ALJ could find physical limitations in excess of these only upon there being a reflective medical opinion present in the record.[5] *See Decker,* 2018 WL 4189662, at *6 ("It is error to find physical limitations in excess of any found by a medical professional, if a medical opinion is contained in the record."). It was Dr. Grabon who was responsible for determining Arnone's physical capabilities, with the ALJ using those capabilities to determine whether Arnone could perform sedentary, light, medium, or heavy work. *See Decker,* 2018 WL 4189662, at *5. The ALJ did not afford significant weight to a medical opinion finding Arnone more capable of manipulating his right upper extremity. (Doc. 5-2, at 42-45). Rather, the ALJ merely explained, "The undersigned finds no basis for the proposed right upper extremity limits, neither in this exam nor on a longitudinal basis, and has not adopted those restrictions," and left it at that. (Doc. 5-2, at 45). The ALJ's determination that Arnone was capable of frequently performing gross and fine manipulation contrary to Dr. Grabon's medical opinion – and without identifying a medical opinion in support – constitutes an interpretation of the medical evidence of record and a substitution of the ALJ's own opinion for that of a medical one, and is grounds for remand.[6] *See Decker,* 2018 WL 4189662, at *6 (citing *McKay,* 2015 WL 5124119, at *17).

---

[5] The Commissioner's discussion of cases involving multiple competing medical opinions and cases involving the creation of an RFC when no medical opinion is present is of limited applicability. (Doc. 9, at 18-20). This case involves the ALJ's consideration of one medical opinion. (Doc. 5-2, at 45).

[6] In his Brief in Opposition, the Commissioner identifies findings by Dr. Hutz that Arnone was "unlimited" in handling and fingering on the right side. (Doc. 9, at 14) (citing Doc. 5-3, at 8-9). However, the ALJ did not mention this opinion in his decision and so it would be improper to consider it at this juncture. *See Fargnoli v. Massanari,* 247 F.3d 34, 44 n. 7 (3d Cir. 2001) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting *SEC v. Chenery Corporation,* 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943)).

B.   THE ALJ'S INAPPROPRIATE INTERPRETATION OF MEDICAL EVIDENCE WAS NOT HARMLESS ERROR.

The Commissioner submits that "even if Dr. Grabon's proposed right arm limitations were added, the ALJ identified a job where reaching, handling, and fingering are not present. (Doc. 9, at 16) (citing Doc. 5-2, at 47). Utilizing the testimony of a vocational expert, the ALJ concluded that Arnone was capable of performing the requirements of representative occupations including system monitor, which the Dictionary of Occupational Titles classifies as not involving reaching, handling, or fingering. (Doc. 9, at 16) (citing DICOT 379.367-010 (System Monitor), 1991 WL 673244 (G.P.O.)). The Commissioner contends that if Dr. Grabone's proposed limitations were taken into account, the vocational expert's testimony establishes that Arnone would still be capable of performing the job of System Monitor. Thus, any lack of accounting for the proposed limitations should be discarded as harmless error. (Doc. 9, at 16).

The Third Circuit has been clear that "the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the hypothetical posed to the vocational expert fails to include all of the claimant's limitations, then the testimony proffered by the vocational expert cannot be considered substantial evidence. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Furthermore, the harmless error doctrine is to be applied sparingly and should not be used to excuse a procedural error "simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Evanitus v. Berryhill*, 2018 WL 1465276, at *11 (M.D. Pa. 2018) (quoting *Peak v. Colvin*, 2014 WL 888494, at *5 (M.D. Pa. 2014)) (internal quotations omitted).

In *Evanitus*, this Court ordered that the ALJ's decision be reversed when she determined that the claimant was capable of occasional stooping even though the only medical opinion which was afforded any weight was one which opined that the claimant "could never bend." *Evanitus,* 2018 WL 1465276, at *10. The Commissioner submitted that this error was harmless because "none of the jobs that the ALJ found [Mr. Evanitus] could perform require bending." *Evaniutus,* 2018 WL 1465276, at *11. The Court denied this argument, explaining that the Court cannot create post-hoc rationalizations when the Commissioner's treatment of evidence is not apparent from the decision itself, and that the vocational expert's reliance on an improper hypothetical question undermines confidence in the accuracy of the vocational expert's testimony as a whole. *Evanitus,* 2018 WL 1465276, at *11. Very simply, "a hypothetical that omits limitations is defective, and the answer thereto cannot constitute substantial evidence to support denial of a claim." *Evanitus,* 2018 WL 1465276, at *11 (citing *Ramirez v. Barnhart,* 372 F.3d 546, 553-55 (3d Cir. 2004)).

The Commissioner asserts that if the ALJ wrongly neglected to include right arm limitations in his hypothetical to the vocational expert, it must have been harmless because the ALJ (using the vocational expert testimony) found a job that did not require reaching, handling, and fingering. (Doc. 9, at 16). In *Evanitus*, the Commissioner also argued that the ALJ's failure to include limitations in his hypothetical should be harmless because he found jobs not requiring the limitations left out of the hypothetical. *Evanitus,* 2018 WL 1465276, at *11. As this Court explained in *Evanitus*, however, Third Circuit law holds that the vocational expert's testimony cannot constitute substantial evidence when the hypothetical is defective. *Evanitus,* 2018 WL 1465276, at *11 (citing *Ramirez,* 372 F.3d at 553-55). The ALJ used the vocational expert's testimony to find the representative occupation of system monitor. (Doc.

15

5-2, at 47). A defective hypothetical results in the vocational expert's testimony not constituting substantial evidence, so the ALJ's dependence on it was not allowed. As such, as in *Evanitus,* it was not harmless error for the ALJ to neglect the right arm limitations present in Dr. Grabon's medical opinion.

      C.    THE COURT DECLINES TO ADDRESS ARNONE'S REMAINING ARGUMENTS.

Because the Court recommends vacatur of the ALJ's decision based on his failure to include right arm limitations present in Dr. Grabon's medical opinion, it declines to address Arnone's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Arnone's additional contentions could be futile given that the ALJ's reconsideration of the RFC may yield a different result.

**V.    CONCLUSION**

Based on the foregoing, the Court will **REVERSE** and **REMAND** the Commissioner's decision to fully develop the record, conduct a new administrative hearing if necessary, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

An appropriate order will follow.

                                                        **BY THE COURT:**

**Dated: March 15, 2021**                              *s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **United States Magistrate Judge**